Joseph **RAIMONDO** and Janet **Raimondo,** Plaintiffs,

v.

**VILLAGE OF ARMADA,** Macomb County Sheriff Department, County of Macomb, Township of Clinton, Wade Trim, Armada Police Department, Community Planning and Management, P.C., Stan S.G. Woodhouse, Jeffrey A. Bahorski, Norman Farver, Stephen Clark, David Coenen, Terrence Rooney, Patricia Magor, Ben Delecke, Rodin Caruss, Larry Cunningham, Shane Diehl, Roy Kinch, John King, Jerry Poston, Chris Lewis, John Lewis, Jo E. Adair, Sherrie Elliott, Delecke Welding, Incorporated, Nancy Parmenter, Paul O. Shoemaker, William Hackel, Carl J. Marlinga, L. Baumgerten, Kyle Kline, Armada Times, Dennis Lemieux, and Linda Jackman, Defendants.

No. 01–CV–71353–DT.

United States District Court, E.D. Michigan, Southern Division.

March 26, 2002.

Joseph Raimondo, Armada, MI, pro se.

Janet Raimondo, Armada, MI, pro se.

Thomas F. Myers, Garan, Lucow, Detroit, MI, for Village of Armada, Armada Police Dept., Jeffrey A. Bahorski, Norman, Farver, Stephen Clark, David Coenen, Patricia Magor, Ben Delecke, Rodin Caruss, Larry Cunningham, Shane Diehl, Roy Kinch, John King, Jerry Poston, Chris Lewis, Jo E. Adair, Sherrie Elliott, Nancy Parmenter, Dennis Lemieux, Linda Jackman.

James S. Meyerand, Macomb County Corp. Counsel, Mt. Clemens, MI, for Macomb County Sheriff Dept., County of Macomb.

G. Gus Morris, Cox, Hodgman, Troy, MI, for Tp. of Clinton.

James R. Case, Margaret L. Martin, Kerr, Russell, Detroit, MI, for Wade Trim.

Robert J. Seibert, Anthoney & Hearsch, Mount Clemens, MI, for Community Planning and Management, P.C., Stan S.G. Woodhouse.

Thomas F. Myers, Garan, Lucow, Detroit, MI, G. Gus Morris, Cox, Hodgman, Troy, MI, for Terrence Rooney, Paul O. Shoemaker.

James S. Meyerand, Macomb County Corp. Counsel, Mt. Clemens, MI, G. Gus Morris, Cox, Hodgman, Troy, MI, for Kyle Kline.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

### I. BACKGROUND

On April 6, 2001, Plaintiffs Joseph and Janet Raimondo, *pro se,* filed a 24–page Complaint against various Defendants, including the Village of Armada and its officials, the County of Macomb and its officials, Clinton Township and its officials, the Armada Times, Community Planning and Management, P.C., Delecke Welding, Inc. and various individuals. There are a total of 35 Defendants. On June 26, 2001, Plaintiffs filed an 81–page First Amended Complaint. All Defendants have filed Appearances and/or Answers and/or Motions to Dismiss or for Summary Judgment. Plaintiffs have also filed motions. At the hearing, James S. Meyerand orally moved

to withdraw as counsel for Defendant Kyle Kline. A hearing was held on all the pending motions, which totaled 28, including the oral motion to withdraw as counsel. Some of the motions were ruled upon on the record and others were taken under advisement.

## II. *FACTS*

Plaintiffs Joseph Raimondo and Janet Raimondo, husband and wife, reside in the Township of Armada, County of Macomb, State of Michigan. In their First Amended Complaint, Plaintiffs allege they are owners of property and a parcel of land within the Township of Armada. Plaintiffs are owners of Raimondos, Armada Collision and Michigan Muscle Unlimited which utilize Plaintiffs' land. The parcel of land was purchased in 1983 and has been used for auto body repair since 1966. Plaintiffs presented themselves before the Armada Township Council in May 1983 believing that they had been granted the right to use the land for an auto body repair shop. Plaintiffs had opened the auto business in 1979. There was no past history of the land designated as wet lands and no known tax records in Armada Township describing the land as wet lands. Plaintiffs claim they have not paid taxes for the land as wet lands.

A summary of the 81–page First Amended Complaint appears to indicate that a new master plan and zoning plan were approved and Plaintiffs' land was designated as wet lands. Plaintiffs claim they received approval for a change of their business in May of 1998. It appears that Plaintiffs are objecting to various decisions made by the Armada Village Planning Commission and Council as it pertains to Plaintiffs' business between 1995 and 1998 because Plaintiffs were unable to meet the Village's Master Plan and Zoning requirements. Plaintiffs cite various actions by the Village Planning Commission and Village Counsel for approving improvements to Defendant Delecke's property which Plaintiffs claim should not have been approved.

It also appears that Plaintiffs do not agree with the Clinton Township Police Department's actions on April 6, 1998 resulting from a resident complaint about Plaintiff's purchase of used vehicles out of state. Apparently, Plaintiff Joseph Raimondo was prosecuted for purchasing used vehicles out of state in violation of Michigan law.

Plaintiffs claim that all Defendants have conspired to deprive Plaintiffs of their constitutional rights. Their business has not been able to grow.

## III. *ANALYSIS*

### A. *Motions to Withdraw as Counsel*

Attorney Thomas F. Myers seeks to withdraw from representing Defendant Shoemaker claiming that Defendant Shoemaker is already represented by another counsel (Attorney G. Gus Morris representing the Clinton Township Defendants). No one opposed the motion. The Court granted this motion at the hearing.

Attorney James S. Meyerand orally moved to withdraw as counsel for Defendant Kyle Kline. No one opposed the motion and the Court granted the motion at the hearing.

### B. *Defendants' Motions to Set Aside Default*

#### 1. *Standard*

Fed.R.Civ.P.Rule 55(c) states that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Here, the good cause standard under Rule 55(c) applies since a default judgment has not been entered by the Court.

Rule 55(c) leaves to the discretion of the trial judge the decision whether to set aside an entry of default. *Shepard Claims Service v. William Darrah & Assoc.*, 796 F.2d 190, 193 (6th Cir.1986). Three factors must be determined to set aside a default under Rule 55(c): 1) whether the plaintiff will be prejudiced; 2) whether the defendant has a meritorious defense; and 3) whether culpable conduct of the defendant led to the default. *Id.* at 192. All three factors must be considered in ruling on a motion to set aside entry of default. *Id.* at 194. However, when the first two factors militate in favor of setting aside the entry of default, it is an abuse of discretion for a district court to deny a Rule 55(c) motion in absence of a willful failure of the moving party to appear and plead. *Id.* In a Rule 55(c) motion to set aside entry of default, the "good cause" standard is applied and it is not absolutely necessary that the neglect or oversight by a defaulted defendant is a reason for the delay to be excusable. To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings. *Id.* In *Shepard Claims Service*, the court of appeals found that because defendant filed an entry of appearance and an answer shortly after learning that default had been entered, the delay was not lengthy and there was no pattern of disregard for court orders or rules. The strong policy in favor of deciding cases on the merits outweighed any inconvenience to the court or plaintiff. *Id.* The Sixth Circuit notes in *Shepard Claims Service* that a more lenient standard is applied to a Rule 55(c) motion where there has only been an entry of default than to a Rule 60(b) motion where judgment has been entered. *Id.* at 193. Since entry of default is just the first procedural step on the road to obtaining a default judgment, the same policy of favoring trials on the merits applies. *Id.*

Applying the three factors to the instant case, it appears that the entry of default should be set aside as specifically noted below. Generally, as to the first factor, Plaintiffs have not shown they are prejudiced by the setting aside of the default. Appearances were filed as soon as counsel ·for the parties were retained. Many of the officials of the governmental entities had to first go through their respective entities. The matter was then referred to the insurance carriers who then retained counsel.

Regarding the second factor, the defaulted defendants generally claim defenses including failure to state a claim, failure to be served personally, lack of subject matter jurisdiction over the matter and qualified immunity. A review of the First Amended Complaint indicates these are all meritorious defenses.

As to the third factor, there is no indication that Defendants' failure to timely file their appearances or Answers was an intentional act to thwart the judicial proceedings or a reckless disregard of such proceedings. It should be noted that most of the Defendants, after being served with the initial 24–page Complaint, shortly thereafter received the 81–page First Amended Complaint. Some of the attorneys claim they only received even-numbered pages of the First Amended Complaint which made it difficult to formulate Answers. Defendants also claim the First Amended Complaint is rambling and it was difficult to determine the claims against their clients. The third factor has not been met by Plaintiffs.

### 2. *Clinton Township Defendants represented by G. Gus Morris*

#### a. *Defendant Kline*

Defendant Kyle Kline seeks to set aside the Clerk's Entry of Default against him. However, the Clerk denied to entry of the

Default as requested by Plaintiffs. There is no Entry of Default against Defendant Kline. Defendant Kline's Motion to Set Aside Clerk's Entry of Default is moot.

#### b. *Defendant Rooney*

Defendant Terrence Rooney seeks to set aside the default entered by the Clerk. Defendant Rooney was served with the Complaint and Summons on July 9, 2001, with an Answer due 20 days later—July 29, 2001 (actually July 30, 2001 since the 29th was a Sunday). Rooney turned the matter over to the Township. The Township in turn referred the matter to the insurance carrier who then retained counsel. Counsel claims he only received every other page of the First Amended Complaint. Counsel filed an appearance on behalf of Defendant Rooney on August 1, 2001, two days late, although no Answer has been filed. The Clerk entered default against Defendant Rooney on August 16, 2001 for failure to file an Answer within 20 days at Plaintiff's request. Defendant Rooney claims meritorious defenses including, failure to state a claim, lack of personal involvement and qualified immunity.

In response, Plaintiffs agree to set aside the default as to Defendant Rooney, therefore, the default entered against Defendant Rooney is set aside.

#### c. *Defendant Clinton Township*

Defendant Clinton Township claims it was improperly served. Fed.R.Civ.P. 4(j)(2) requires Plaintiffs to deliver a copy to the chief executive officer of the governmental entity or as otherwise prescribed under state law. MCR 2.105(G) provides that a supervisor of the township or the township clerk must be served. In this case, Plaintiffs merely dropped off a copy of the Complaint at the Township Offices. The Complaint was given to the chief executive officer of the Township who submitted the matter to the Township attorney.

The Township attorney then prepared a claim form for submission to the Township's insurance carrier (Michigan Municipal Insurance Alliance) who then retained counsel. Defense counsel claims he only received every other page of the First Amended Complaint. On August 1, 2001, an appearance was filed on behalf of Clinton Township. The returned Summons indicates Clinton Township was served on July 16, 2001, the Answer being due 20 days later on August 5, 2001 (actually August 6, 2001 since the 5th was a Sunday). The appearance was filed within the 20 days on August 1, 2001 but the actual Answer has not been filed. The Clerk entered default on August 16, 2001 (at Plaintiff's request) for failure to file an Answer within 20 days. Defendant Clinton Township claims meritorious defenses including failure to properly serve, failure to state a claim, no vicarious liability as to the Township, failure to state policy, custom or procedure on behalf of Township. These are meritorious defenses. Defendant Clinton Township has shown good cause for setting aside the default. Defendant Clinton Township's Motion to Set Aside the Default is granted.

#### d. *Defendant Shoemaker*

Defendant Shoemaker claims he was served with the Summons and Complaint on July 16, 2001. He then turned this matter over to the Township of Armada, which turned it over to the insurance carrier (Michigan Township Participating Plan) who then retained counsel. Counsel claims he only received even numbered pages of the Complaint. Counsel filed an Appearance on behalf of Defendant Shoemaker on July 31, 2001. Although an appearance was filed within the 20 days upon service of the Complaint, the Clerk entered default against Defendant Shoemaker on August 16, 2001 for failure to file an answer within 20 days of July 16, 2001

which would have been August 5, 2001 (actually August 6, 2001 since the 5th was a Sunday). Defendant Shoemaker filed an Answer on August 21, 2001. Defendant Shoemaker claims meritorious defenses of failure to state a claim, lack of personal involvement as to the execution of the search warrant on Plaintiffs' business and qualified immunity. Defendant Shoemaker has shown good cause for setting aside the default, therefore, Defendant Shoemaker's Motion to Set Aside Default is granted.

### 3. Defendants represented by Attorney Seibert

### a. Defendant Community Planning and Management, P.C.

The returned Summons indicates Defendant CP & M was served on July 16, 2001, with an Answer due 20 days later on August 5, 2001 (actually August 6, 2001 since the 5th was a Sunday). Subsequent to being served, Defendant CP & M retained counsel and on July 25, 2001, counsel filed an Appearance on behalf of CP & M, within the 20 days. However, the Answer was not filed until August 10, 2001, beyond the 20 days. On August 15, 2001, the Clerk entered default against Defendant CP & M for failure to file an Answer. Defendant CP & M claims meritorious defenses including failure to state a claim, failure to assert any theory of law against CP & M such as policy, custom or procedure, there is no vicarious liability and thus CP & M is not liable under the theory of respondeat superior. Defendant CP & M has shown good cause for setting aside of the default. Defendant CP & M's Motion to Set Aside Default is granted.

### b. Defendant Woodhouse

Defendant Woodhouse is employed by Defendant CP & M as a professional planner. Defendant Woodhouse claims he was never served with a copy of the Summons or Amended Complaint. The returned Summons indicates Defendant Woodhouse was served on July 16, 2001, with an Answer due 20 days later on August 5, 2001 (actually August 6, 2001 since the 5th was a Sunday). Woodhouse retained counsel who filed an Appearance on July 25, 2001. An Answer was filed on August 10, 2001. On August 15, 2001, the Clerk's entry of default was entered since the Answer was not filed within 20 days. Defendant Woodhouse asserts meritorious defenses including improper service, failure to state a claim, lack of factual allegations against Defendant Woodhouse, lack of any theory of liability including policy, custom or procedure since there is no vicarious liability in a civil rights action under the theory of respondeat superior. Defendant Woodhouse has shown good cause to set aside the default. Defendant Woodhouse's Motion to Set Aside Default is granted.

### 4. Defendant Lewis

Defendant John Lewis is representing himself but he is an attorney. He claims that he was not served personally with the Summons and Complaint but received copies from his wife, Chris Lewis, on July 12, 2001. (Chris Lewis is also a co-Defendant but is not in default.) The returned Summons indicates Defendant Lewis was served on July 9, 2001, with an Answer due 20 days later on July 29, 2001 (actually July 30, 2001 since the 29th was a Sunday). On August 16, 2001, the Clerk entered a default against Defendant Lewis. On August 20, 2001, Defendant Lewis filed his Answer. Defendant Lewis asserts the meritorious defenses of failure to state a claim, lack of subject matter jurisdiction, statute of limitations and bankruptcy stay. Defendant Lewis claims he filed personal bankruptcy on May 17, 2001 and that the service of the instant complaint was in violation of the 90 day automatic stay. Defendant Lewis has shown good cause to

set aside the default, therefore, his Motion to Set Aside Default is granted.

### 5. *Defendant Delecke Welding, Inc.*

Defendant Delecke Welding's document entitled "Objection/Motion" as to the Clerk's Entry of Default was filed on August 30, 2001. The returned Summons indicates Delecke Welding was served on July 9, 2001 with an Answer due 20 days later on July 29, 2001 (actually July 30, 2001 since the 29th was a Sunday). Defendant Delecke Welding was attempting to determine whether the Village of Armada would represent Defendant Delecke Welding since the individual Ben Delecke was being represented by the Village. No response was forthcoming from the Village's counsel so Defendant Delecke Welding retained counsel. On July 30, 2001, counsel on behalf of Defendant Delecke Welding filed an Appearance. The Clerk entered default on August 16, 2001 for failure to file an Answer within 20 days. On August 16, 2001, Defendant Delecke Welding filed its Answer. Counsel claims Defendant Delecke Welding never received a copy of the Request for Clerk's Entry of Default. Defendant Delecke Welding claims meritorious defenses including failure to state a claim, judgment on the pleadings under Fed.R.Civ.P. 12(c), lack of substantive factual allegation against Defendant Delecke Welding. Defendant Delecke Welding also claims that the First Amended Complaint fails to comport with Fed.R.Civ.P. 8. Defendant Delecke Welding has shown good cause for setting aside the default. The default is set aside as to Defendant Delecke Welding.

### C. *Plaintiffs' Motion to Move on Judgment as to Defaulted Defendants*

Plaintiffs filed a Motion to Move on Judgment as to certain defaulted Defendants, which the Court considers as a Motion for Default Judgment under Fed.R.Civ.P. 55(b).

Fed.R.Civ.P.Rule 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed.R.Civ. P.Rule 55(b)(2) states that upon application by the party, the Court may enter a Judgment by Default. Rule 55(b)(2) further states: "If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper . . . ."

In the instant case, Plaintiffs properly applied a Clerk's entry of default and the Clerk did enter default against various Defendants. Given the above rulings, Plaintiffs' motions for entry of default judgment are denied as to Defendants Shoemaker, Clinton Township, Delecke Welding, John E. Lewis, Stan G. Woodhouse and Community Planning and Management.

### D. *Various Defendants' Motion to Dismiss or for Summary Judgment*

#### 1. *Standard*

Rule 12(b)(2) provides for a motion to dismiss for lack of subject matter jurisdiction. Rule 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. A Rule 12(b)(6) motion tests the legal sufficiency of the plaintiff's Complaint. *Davey v. Tomlinson*, 627 F.Supp. 1458, 1463 (E.D.Mich.1986). In evaluating the propriety of dismissal under Rule 12(b)(6), the factual allegations in the Complaint must

be treated as true. *Janan v. Trammell,* 785 F.2d 557, 558 (6th Cir.1986). If matters outside the pleading are presented in a Rule 12(b)(6) motion, the motion shall be treated as one for summary judgment under Rule 56(b) and disposed of as provided in Rule 56.

Rule 56(c) provides that summary judgment should be entered only where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548. A court must look to the substantive law to identify which facts are material. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### 2. *Defendant Armada Times' Motion to Dismiss*

#### a. *Rule 12(b)(6)*

Defendant Armada Times' Motion to Dismiss based on failure to state a claim will be addressed first. Defendant Armada Times is a weekly newspaper distributed in the Village of Armada, Macomb County, Michigan. Defendant Armada Times claims Plaintiffs have failed to state a claim against it since Plaintiffs have failed to state a cognizable cause of action for failure to publish material desired by Plaintiffs.

In response, Plaintiffs claim that Defendant Armada Times conspired with Defendants, including the Village of Armada and its officials, against Plaintiffs to deprive them of their constitutional rights. Plaintiffs claim that Defendant Armada Times was biased against Plaintiffs which cost Plaintiffs everything that they own and has changed their lives into a living nightmare.

Because Plaintiffs are proceeding *pro se,* their Complaint must be liberally construed. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Although the Court liberally construes the Complaint, Plaintiffs are still required to state claims which are more than bare assertions of legal conclusions. See *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n,* 176 F.3d 315, 319 (6th Cir.1999).

Liberally construing Plaintiffs' First Amended Complaint, it appears they are claiming that Defendant Armada Times have not been fair in covering both sides of the dispute between Plaintiffs and the Village of Armada and its officials. (See

First Amended Complaint, ¶ 120 and p. 79, relief sought) Plaintiffs claim that Defendant Armada Times chose to protect the Defendants in this case and failed to print the truth about the Defendants.

■ The United States Constitution under the First Amendment grants freedom of speech. The United States Supreme Court has held that the Government may not compel newspapers to publish anything nor are citizens required to say anything. In *Miami Herald v. Tornillo*, 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974), the Supreme Court held unconstitutional a Florida statute which required a newspaper to print a response from a candidate if the newspaper had previously printed material about that candidate. "The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of editorial control and judgment." *Id.* at 257, 94 S.Ct. 2831. Although a responsible press is a desirable goal, "press responsibility is not mandated by the constitution and like many other virtues it cannot be legislated." *Id.*

Defendant Armada Times cited an unpublished opinion by the Sixth Circuit and properly submitted a copy of said opinion with its brief. In that opinion, the Sixth Circuit affirmed the dismissal of a complaint by prisoners who sued a newspaper for discriminating against them on the basis of religion and race. The Sixth Circuit concluded that the dismissal of the complaint for failure to state a claim was proper. "A private publication has a First Amendment free press right to refuse to print material submitted to it for publication." *Grosswirt v. Columbus Dispatch,* No. 00–3451, 29 Med.L.Rptr. 1224, 2000 WL 1871696 (December 13, 2000), citing *Miami Herald, supra.*

■ Taking the allegations against the Defendant Armada Times as true, that it was unfair in reporting stories about Plaintiffs and Defendants, based on the *Miami Herald* and *Grosswirt* cases cited by Defendant Armada Times, Plaintiffs have failed to state a claim against the Times since Defendant Armada Times has a constitutional right under the First Amendment to print any material it chooses. Plaintiffs' claim of conspiracy is merely conclusory and there are no specific facts alleged in their First Amended Complaint to overcome Defendant Armada Times' constitutional right under the First Amendment.

**b.  *Subject  Matter  Jurisdiction/Fed.R.Civ.P. 12(b)(2)***

Defendant Armada Times claims that this Court has no subject matter jurisdiction over the parties since there is no diversity of citizenship between Plaintiffs and Defendant Armada Times, a Michigan resident.

It is true that there is no diversity of citizenship between the parties. In liberally construing Plaintiffs' First Amended Complaint, it appears Plaintiffs were claiming a federal question based on the United States Constitution against Defendant Armada Times under 42 U.S.C. § 1985 as noted in their response to the instant motion. Diversity of citizenship is not required in order for the Court to exercise its subject matter jurisdiction over a federal question under 28 U.S.C. § 1331. Diversity of citizenship is required for the Court to exercise jurisdiction under its diversity jurisdiction under 28 U.S.C. § 1332, which, in liberally construing the First Amended Complaint, is not applicable in this case. However, for the reasons set forth above, this part of Defendant Armada Times' motion is moot since the action has been dismissed against Defendant Armada Times based on failure

to state a claim under Fed.R.Civ.P. 12(b)(6).

### c. *Motion for Sanctions*

Defendant Armada Times requests sanctions for filing a frivolous complaint but fails to cite any law to support its request. This motion is denied without prejudice. Defendant Armada Times may file a separate motion with proper support and cases pursuant to Fed.R.Civ.P. 11.

### 3. *Defendant Wade Trim's Motion to Dismiss or in the Alternative, Motion for More Definite Statement*

### a. *Subject matter jurisdiction/Fed.R.Civ.P. 12(b)(1)*

Defendant Wade Trim seeks a dismissal of the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of jurisdiction claiming that Plaintiffs have failed to provide proof of subject matter jurisdiction in their 81–page Complaint. Defendant Wade Trim is essentially claiming that Plaintiffs have not alleged a valid jurisdictional statement in their Complaint.

In response, Plaintiffs claim they have asserted a jurisdictional claim based on conspiracy under 42 U.S.C. § 1985.

As noted above, because Plaintiffs are proceeding *pro se,* their claims must be liberally construed. Although 42 U.S.C. § 1985 may not have been cited in their Complaint, they now have acknowledged in their response that they are claiming conspiracy under 42 U.S.C. § 1985. As noted by Defendant Wade Trim, Plaintiffs have also mentioned 42 U.S.C. § 1983 in their Complaint along with references to various constitutional claims. Under Fed.R.Civ.P. 12(b)(1), Plaintiffs have stated a sufficient basis for jurisdiction in their Amended Complaint and their response in claiming a federal question. Defendant Wade Trim's Motion to Dismiss under Rule 12(b)(1) is denied without prejudice.

### b. *Failure to State a Claim/ Fed.R.Civ.P. 12(b)(6)*

Defendant Wade Trim seeks to dismiss the claims against them pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim. Defendant Wade Trim claims that the Village of Armada contracted Defendant Wade Trim in August 10, 1998 to assist the Village in the preparation of its Master Plan. In accordance with the contract, Defendant Wade Trim was to complete a field survey of existing land uses, was to utilize aerial topographic photos to evaluate vegetation characteristics and was to retrieve information from published sources, including the U.S. Department of the Interior Wetland Inventory map, in order to prepare existing land use and environmental profile reports and maps. Defendant Wade Trim led two community workshops to establish community goals and objectives and then prepared a Community Goals and Objectives survey. Defendant then prepared a draft of the Master Plan which was discussed at public hearings and approved by the Village of Armada on June 5, 2000. The issue of wetlands was discussed in the Master Plan and depicted in the Master Plan. Defendant Wade Trim claims that their designation of the wet lands was based on the Michigan Resource Information system data. Residential development was also mentioned in the Master Plan.

Plaintiff, Mr. Raimondo, attended one public meeting held by the Planning Commission to discuss the draft of the Master Plan and complained that a portion of his land was designated as wet lands. The representative from Defendant Wade Trim explained at the meeting and by a follow up letter that the Master Plan was not a form of regulatory agency determination and that Mr. Raimondo could seek assistance from the Michigan Department of Environmental Quality and the Army

Corps of Engineers regarding his land. Defendant Wade Trim explained to Plaintiffs that the designation of their land as wet lands was derived from the Current Use Inventory Classification System done by the Division of Land Resource Programs, Department of Natural Resources.

Defendant Wade Trim claims that Plaintiffs cannot show that they conspired with Defendants and that Defendant Wade Trim acted in furtherance of a conspiracy. Defendant Wade Trim further claims that Plaintiffs cannot demonstrate that Defendant Wade Trim was motivated by some class-based animus against Plaintiffs, such as race.

In response, Plaintiffs claim that no discovery has been conducted and that they have sufficiently stated a conspiracy claim against Defendant Wade Trim. Plaintiffs claim that they had no notice that their land was going to be designated as wet lands under the new Master Plan.

■ In order establish a Section 1985(3) civil conspiracy claim, a plaintiff must establish: 1) a conspiracy involving two or more persons; 2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and 3) an act in furtherance of the conspiracy; 4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir.1998). Since the motion has been brought under Rule 12(b)(6), the allegations in the First Amended Complaint must be treated as true. Also, as noted above, Plaintiffs' Complaint must be liberally construed.

■ As to the first factor, Plaintiffs have set forth sufficient facts in their First Amended Complaint that the conspiracy involves two or more persons.

Regarding the second factor, Plaintiffs have also stated sufficient facts that the purpose of the conspiracy was to deprive Plaintiffs of the use of their land and that they did not have sufficient notice that their land was going to be designated as wet lands under the new Master Plan. Plaintiffs' First Amended Complaint indicates that their land has been used as an auto body repair shop since 1966, well before the new Master Plan. Plaintiffs further allege that there was no past history of the land being designated as wet lands and that there were no known tax records describing the land as wet lands.

Addressing the third factor, acts in furtherance of a conspiracy, Defendant Wade Trim claims that Plaintiffs cannot support this factor. However, Defendant Wade Trim when addressing this factor, referred to allegations of facts and evidence outside of Plaintiffs' Complaint. Defendant Wade Trim's claim that their designation of Plaintiffs' land as wet lands is based on data from the Department of Natural Resources which was already in existence at that time and cannot be considered by the Court in a Rule 12(b)(6) motion. The Court will not consider the instant motion under Rule 56 at this time since no discovery has taken place and Plaintiffs would be at a disadvantage since Defendant Wade Trim's motion was made under Rule 12(b)(6). In reading Plaintiffs' Complaint liberally, Plaintiffs have set forth sufficient facts at this time that Defendant Wade Trim, in assisting Defendant Village of Armada in preparing the Master Plan, conducting the necessary survey, reviewing other data to designate Plaintiffs' land as wet lands, and identifying Plaintiffs' land as wet lands in the Master Plan, acted in furtherance of the conspiracy.

As to the fourth factor, Plaintiffs have alleged sufficient facts in their First Amended Complaint that Defendants' actions resulted in an injury to them and their property. Plaintiffs claim that their

business has not grown and that they have lost money because of the designations in the Master Plan and the Defendants' actions regarding zoning.

Regarding Defendant Wade Trim's claim that Plaintiffs cannot demonstrate that any conspiracy was motivated by some class-based animus, such as race, the Court finds that motivation is a state of mind issue as to the various Defendants. Based on Plaintiffs' various allegations of conspiracy between the Defendants, that claim requires discovery at this time.

Plaintiffs have stated a conspiracy claim against Defendant Wade Trim based on a liberal reading of their First Amended Complaint. Defendant Wade Trim's allegations in their brief are based on facts outside of the First Amended Complaint and require discovery. Defendant Wade Trim's Motion to Dismiss under Fed. R.Civ.P. 12(b)(6) is denied.

### c. *Rule 12(e)/More Definite Statement*

Alternatively, Defendant Wade Trim seeks a more definite statement. That motion will be addressed below along with the other Defendants' motion for more definite statement.

### 4. *The Armada Defendants' Motion for Summary Judgment under Fed. R.Civ.P. 56 and Fed.R.Civ.P. 12(c)*

The Village of Armada and various individuals related to the Village of Armada move for summary judgment under Fed. R.Civ.P. 56 and Fed.R.Civ.P. 12(c) stating that the First Amended Complaint should be dismissed based on the statute of limitations. The Armada Defendants claim that the actions complained of by Plaintiffs occurred more than three years from the date Plaintiffs filed the Complaint on April 6, 2001. With one exception, May 1998, the Village of Armada and others, have not taken any action with regard to Plaintiffs' property on South Fulton Street. The

First Amended Complaint appears to allege wrongdoing that took place between 1995 and April 6, 1998. An affidavit by the Clerk, Jeri Pompilius, was submitted indicating that nothing in the minutes of the Council of the Village of Armada from April 6, 1998 indicates that Plaintiffs have sought any action by the Village, other than approval of Plaintiffs' request for a name change for the business on May 4, 1998 and a one-year extension to pave the back parking lot on May 11, 1998. The Armada Defendants claim that most of the individual Defendants have not been in office for over three years. The Armada Defendants claim that the Michigan statute of limitations is three years from the date of the alleged injury, citing M.C.L.A. 600.5805(9).

In response, Plaintiffs claim the actions of the Armada Defendants have been ongoing even beyond April 6, 1998. Plaintiffs claim that the police raid on his property which occurred on April 6, 1998 involving storage of out of state vehicles, was within the three-year statute of limitations since the instant suit was filed on April 6, 2001. Plaintiffs claim that the April 6, 1998 raid was a result of Defendants' prior actions against him and that he was set up for the April 6, 1998 raid. Mr. Raimondo claims the harm to him occurred on that date and also when the Capac State Bank filed suit against him on February 2001. Plaintiffs claim that Defendant Delecke, through the Planning Commission who wrote the owner of the building, that Plaintiffs were to have their rent privileges terminated and that Plaintiffs were to vacate the property on February 1999. The action by the Planning Commission to enforce and guarantee rent privileges to be terminated and Plaintiffs to vacate the property in February 1999 was within the three year statute of limitations. Plaintiffs further claim that the Village of Armada failed to issue

a building permit to move his garage and remove and replace his concrete in June 2001 because Plaintiffs had filed a lawsuit. Plaintiffs also claim that Defendants violated their Fifth Amendment right because the new Master Plan designated their land as wet lands without notice and lack of compensation which constituted an illegal taking of their land under federal law. The Master Plan was approved in early 2000 (verified by Defendant Wade Trim's allegations in its Motion to Dismiss) within the statute of limitations period.

■ Liberally construing Plaintiffs' Complaint and their response to Defendants' Motion for Summary Judgment based on the statute of limitations, there are genuine issues of material fact as to whether or not the statute of limitations bars the instant suit against Defendants. The Court also notes that Plaintiffs cited 42 U.S.C. § 1983 in their Complaint. Defendants only cited the state law personal injury statute of limitations in their briefs with no analysis of the statute of limitations under 42 U.S.C. § 1983, even though the three-year statute of limitations may be applicable in a Section 1983 action. The Armada Defendants' Motion for Summary Judgment based on the statute of limitations is denied without prejudice.

### 5. *Armada Defendants' Motion to Dismiss or in the Alternative to Strike or for More Definite Statement*

#### a. *Rule 12(b)(6)*

The Armada Defendants seek dismissal under Fed.R.Civ.P. 12(b)(6) of the negligence claims against them. The Armada Defendants claim that the Complaint clearly reveals that there are no negligence claims against them. The allegations are so unclear that Defendants are unable to discern what claims are alleged.

In response, Plaintiffs claim they are alleging constitutional claims against Defendants based on 42 U.S.C. § 1985.

Liberally construing Plaintiffs' Complaint, and, taking Plaintiffs' allegations as true, Plaintiffs have stated a constitutional claim against the Armada Defendants based on 42 U.S.C. §§ 1985 and 1983. The Armada Defendants' motion to dismiss under Rule 12(b)(6) is denied as to the constitutional claims. As to the negligence claim, Plaintiffs are not claiming negligence based on their response to the motion and based on a liberal reading of Plaintiffs' Complaint. The negligence claim, if any, is dismissed.

#### b. *Rule 12(f)/Motion to Strike Complaint*

Alternatively, the Armada Defendants claim that Plaintiffs' Complaint should be stricken under Fed.R.Civ.P. 12(f) because the pleading is "redundant, immaterial, impertinent or scandalous." The Armada Defendants claim that the entire Complaint is redundant and constitutes no more than ramblings and supposition with no foundation. Much of the information contained within the Complaint is immaterial to any legal theory that could be presented.

Fed.R.Civ.P. 12(f) provides, "upon a motion made by a party before responding to a pleading 21 . . ., the court may order stricken from any pleading any redundant, immaterial impertinent or scandalous matter." Although the Armada Defendants have not filed an Answer at this time, the Court declines to strike the First Amended Complaint given that other Defendants in this case have filed Answers to the First Amended Complaint. The First Amended Complaint is long and many paragraphs are in narrative form containing redundant statements. As noted above, the Court has found that in liberally construing the

First Amended Complaint, Plaintiffs have stated a constitutional claim under 42 U.S.C. §§ 1983 and 1985. The Armada Defendants' Motion to Strike the First Amended Complaint is denied.

### c. *Fed.R.Civ.P. 12(e)/Motion for More Definite Statement*

The Armada Defendants alternatively seek a more definite statement from Plaintiffs. This motion will be addressed below, along with the other Defendants' Motion for More Definite Statement.

### E. *Defendants' Motion for More Definite Statement under Fed.R.Civ.P. 12(e)*

Defendant Wade Trim, the Armada Defendants, the Clinton Township Defendants and Defendant Kyle Kline filed a *Motion for More Definite Statement under* Fed.R.Civ.P. 12(e). These Defendants claim that the 81–page First Amended Complaint is rambling, long, and does not comport with Fed.R.Civ.P. 8(a)(2). Rule 8(a)(2) provides that a complaint should contain a "short and plain statement" that the pleader is entitled to relief. Rule 8(e)(1) further provides that the averments should be simple, concise and direct.

In response, Plaintiffs claim they are not attorneys and have to the best of their abilities set forth their claims against the various Defendants.

Fed.R.Civ.P. Rule 12(e) provides "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired." Fed.R.Civ.P. 12(e). Even with a liberal reading of Plaintiffs' First Amended Complaint, it appears that it does not comport with Fed.R.Civ.P. Rule 8 since the state-ments contained therein are not short and plain and are not simple, concise and direct. However, it is noted that other Defendants, such as the Macomb County Defendants, Community Planning and Management, Stan Woodhouse, Delecke Welding, John Lewis, and Paul O. Shoe-maker, have filed Answers and Affirmative Defenses to the First Amended Complaint.

As to Defendant Wade Trim, based on their Motion to Dismiss, Defendant Wade Trim has an understanding of the claim against them—that Defendant Wade Trim conspired with the Defendants, specifically, the Armada Defendants as to the preparation of the New Master Plan. Defendant Wade Trim has a sufficient understanding of the claims against it to sufficiently Answer the Complaint. Defendant Wade Trim can determine from the First Amended Complaint which paragraphs pertain to them in order to admit or deny those allegations.

Regarding the Armada Defendants— they have consistently argued they have no clue as to the claims against them. However, even though the First Amended Complaint is more than 120 paragraphs long, the Armada Defendants can sufficiently answer the allegations contained in those paragraphs. Liberally construing the First Amended Complaint, the main claims against the Armada Defendants are for the actions they took as to Plaintiffs' property and as to the new Master Plan at issue. They are now on notice based on Plaintiffs' response and the other documents filed in this case to date that the claims against them are constitutional claims under 42 U.S.C. §§ 1983 and 1985.

As to Defendants Clinton Township and Kline, the same reasoning applies. There are sufficient facts alleged that Clinton Township and Kline participated in the prosecution/raid against Plaintiffs regard-

ing their motor vehicle business, specifically the April 6, 1998 incident.

Based on the responses filed by Plaintiffs to the various motions filed in this case to date and their First Amended Complaint, Plaintiffs, proceeding *pro se*, may be unable to articulate their claims in a different and clearer way than they already have done in their responses and the First Amended Complaint. The Motions for More Definite Statement filed by the Armada Defendants, Defendants Armada Trim, Clinton Township and Kline are denied.

### F. *Plaintiffs' Motions filed After Notice of Hearing was Mailed*

The following motions have been filed by Plaintiffs after the Notice of Hearing was mailed as to the above motions: 1) Plaintiffs' Motion to Remove and Delete Par. 118 of Amendment to Amendment of Defendant Delecke, filed September 12, 2001; 2) Plaintiffs' Motion to have a hearing to move to pretrial discovery and early settlement talk, filed September 13, 2001; and 3) Plaintiffs' Motion to grant an estoppel stop action on the eviction and the sale of Plaintiffs' home until the case moves through discovery, filed September 13, 2001. To date, no responses have been filed to these Motions.

### 1. *Plaintiffs' Motion to Remove and Delete Par. 118*

Plaintiffs appear to seek to delete Paragraph 118 of the Amendment of the Amended Complaint as to Defendant Delecke. No one has objected to this Motion. Plaintiffs' Motion to Remove and Delete Paragraph 118 of the Amendment of the Amended Complaint as to Defendant Delecke is granted.

### 2. *Plaintiffs' Motion to have a Pretrial for Discovery and Settlement Talk*

▇▇▇▇ It appears Plaintiff is seeking a scheduling conference in this matter in order to begin discovery and to have early settlement talks. As noted above, numerous Defendants have asserted qualified immunity defenses. Because there are numerous Defendants in this case, the qualified immunity defense in a Section 1983 claim should be addressed first. Government officials are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Greene v. Reeves,* 80 F.3d 1101, 1104 (6th Cir.1996) (*citing Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officers would have concluded that [the action at issue was lawful]; but if officers of reasonable competence could disagree on this issue, immunity should be recognized. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Qualified immunity is an initial threshold question the court is required to rule on early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.*

However, because not all Defendants are related to governmental entities, the

Court will issue a Scheduling Order as to discovery for all parties. The parties raising qualified immunity may file dispositive motions based on that defense at the first instance after they have taken discovery on the qualified immunity defense.

As to settlement talks, based on the various motions, Defendants are probably not willing to engage in settlement discussions at this juncture although the Court encourages such discussions amongst the parties. Any party may request a Settlement Conference date be set by the Court.

### 3. Plaintiffs' Motion to Grant an Estoppel Stop Action on the Eviction and the Sale of Plaintiff's Home until case moves through discovery

The First Amended Complaint is void of any allegation by any of the named Defendants that these Defendants were evicting Plaintiffs from their home. It appears that based on Plaintiffs' responses regarding the other motions, Capac State Bank has sued Plaintiffs, based on loans with mortgages tied to their home. In any event, Capac State Bank is not a party to this suit. The Court does not have jurisdiction over Capac State Bank at this time since they are not parties to the suit. Plaintiffs have not shown that preliminary injunction should issue at this time under Fed.R.Civ.P. 65 since Capac State Bank is not a party and there are no factual allegations that the other Defendants in this case are seeking to evict Plaintiffs from their home. Plaintiffs' Motion to Grant an Estoppel Stop Action on the Eviction and the Sale of Plaintiff's Home is denied.

### G. Plaintiffs' Request for Sanctions

It appears at this time that Plaintiffs are not seeking sanctions against Defendants relating to Macomb County and their counsel, James S. Meyerand and attorney Robert J. Seibert and his clients Community Planning and Management P.C. and

Stan Woodhouse. Plaintiffs have merely filed a "Notice" indicating sanctions would be sought at a later date against these parties. Fed.R.Civ.P.Rule 11 provides that prior to requesting/filing a motion for sanctions under this rule, the party must serve notice to the opposing party under the safe harbor provision of Rule 11. Plaintiffs' request for sanctions is moot at this time.

### H. Plaintiffs' Request for Appointment of Counsel

Plaintiffs seek appointment of counsel. " '[A]ppointment of counsel in a civil case is ... a matter within the discretion of the court. It is a privilege and not a right.' " *Childs v. Pellegrin,* 822 F.2d 1382, 1384 (6th Cir.1987) (quoting *United States v. Madden,* 352 F.2d 792, 793 (9th Cir.1965)). Based on Plaintiffs' pleadings, motions and responses to motions at this time, it appears that Plaintiffs have been able to properly seek defaults in this case, properly respond to motions filed by Defendants and properly file motions before the Court. Plaintiffs appear to be versed on the rules of procedure having properly filed pleadings and documents as noted above. It appears that Plaintiffs are able to prosecute this matter on their own. Counsel is not required at this time. Plaintiffs' request for appointment of counsel is denied without prejudice.

## IV. CONCLUSION

For the reasons set forth on the record and above,

IT IS ORDERED that the Motion by Thomas Myers to withdraw as counsel for Paul O. Shoemaker **(Docket No. 48, filed 8/9/01)** is GRANTED.

IT IS FURTHER ORDERED that James S. Meyerand's oral motion to withdraw as counsel for Kyle Kline **(made on**

the record October 22, 2001) is GRANTED.

IT IS FURTHER ORDERED that Defendant Clinton Township's Motion to Set Aside Default (**Docket No. 53, filed 8/14/01**) is GRANTED.

IT IS FURTHER ORDERED that Defendant Shoemaker's Motion to Set Aside Default (**Docket No. 54, filed 8/14/01**) is GRANTED.

IT IS FURTHER ORDERED that Defendant Kline's Motion to Set Aside Default (**Docket No. 55, filed 8/14/01**) is MOOT.

IT IS FURTHER ORDERED that Defendant Rooney's Motion to Set Aside Default (**Docket No. 56, filed 8/14/01**) is GRANTED.

IT IS FURTHER ORDERED that Defendants Lewis et al.'s Motion to Set Aside Default (**Docket No. 82, filed 8/20/01**) is GRANTED.

IT IS FURTHER ORDERED that Defendants Community Planning & Management PC et al.'s Motion to Set Aside Default (**Docket No. 97, filed 8/30/01**) is GRANTED.

IT IS FURTHER ORDERED that Defendants Stan SG Woodhouse et al.'s Motion to Set Aside Default (**Docket No. 98, filed 8/30/01**) is GRANTED.

IT IS FURTHER ORDERED that Defendant Delecke Welding Inc.'s Motion to Set Aside Default, along with Motion for Hearing on Response by Plaintiffs' to Defendant Delecke's Objections to Clerk's Entry of Default (**Docket No. 114, filed 10/5/01**) is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Move on Judgment as to Defendant Paul Shoemaker (**Docket No. 84, filed 8/27/01**) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Move on Judgment as to Defendant Clinton Township (**Docket No. 85, filed 8/27/01**) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Move on Judgment as to Defendant Delecke Welding (**Docket No. 87, filed 8/27/01**) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Move on Judgment as to Defendant John E. Lewis (**Docket No. 88, filed 8/27/01**) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Move on Judgment as to Defendant Stan G. Woodhouse (**Docket No. 89, filed 8/27/01**) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Move on Judgment as to Defendants Stan G. Woodhouse and Community Planning and Management (**Docket No. 90, filed 8/27/01**) is DENIED.

IT IS FURTHER ORDERED that Defendant Armada Times' Motion to Dismiss (**Docket No. 9, filed 7/30/01**) is GRANTED. Defendant Armada Times' Motion request for sanctions is DENIED without prejudice.

IT IS FURTHER ORDERED that Defendant Armada Times is DISMISSED from this action with prejudice.

IT IS FURTHER ORDERED that Defendant Wade Trim's Motion to Dismiss (**Docket No. 45–1, filed 8/6/01**) is DENIED.

IT IS FURTHER ORDERED that the Armada Defendants' (Parmenter, et al) Motion for Summary Judgment (**Docket No. 74, filed 8/9/01**) is DENIED without prejudice.

IT IS FURTHER ORDERED that the Armada Defendants' (Parmenter, et al.) Motion to Dismiss (**Docket No. 79–1, filed 8/9/01**) is GRANTED IN PART and DENIED IN PART. The constitutional claims

remain and the negligence claim, if any, is DISMISSED.

IT IS FURTHER ORDERED that the Armada Defendants' (Parmenter, et al.) Motion for More Definite Statement **(Docket No. 79–2, filed 8/17/01)** is DENIED.

IT IS FURTHER ORDERED that Defendant Wade Trim's Motion for More Definite Statement **(Docket No. 45–2, filed 8/6/01)** is DENIED.

IT IS FURTHER ORDERED that the Clinton Township Defendants' Motion for More Definite Statement **(Docket No. 83, filed 8/22/01)** is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Remove and Delete ¶ 118 of Amendment to Amendment of Defendant Delecke **(Docket No. 102, filed 9/12/01)** is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to have a hearing to move to pretrial for discovery and early settlement talk **(Docket No. 103, filed 9/13/01)** is GRANTED IN PART and DENIED IN PART as more fully set forth above. The Court will issue a Scheduling Order.

IT IS FURTHER ORDERED that Plaintiffs' Motion to grant an estoppel stop action on the eviction and the sale of Plaintiff's home until case moves through discovery **(Docket No. 104, filed 9/13/01)** is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Request for Sanctions **(Docket No. 46, filed 8/8/01)** is MOOT.

IT IS FURTHER ORDERED that Plaintiffs' Request for Appointment of Counsel **(Docket No. 2, filed 4/6/01)** is DENIED without prejudice.

IT IS FURTHER ORDERED that those Defendants who have not filed an Answer in this matter file said Answer within twenty-one (21) days from the entry of this Order.